UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PETER EMMET,

        Plaintiff,

                         CASE NO. 16-cv-11211
v.                         HONORABLE GERSHWIN A. DRAIN

TOM DEL FRANCO, *et al.*,

        Defendants.
_____/

## OPINION AND ORDER DENYING MOTION TO DISMISS WITHOUT PREJUDICE [#18]

## I.    INTRODUCTION

On April 4, 2016, this matter was transferred from the United States District Court for the District of New Jersey. Presently before the Court is the Defendants' Motion to Dismiss, filed on May 12, 2016. Plaintiff filed a Response in Opposition on June 2, 2016, and Defendants filed a Reply in support of their motion on June 16, 2016. A hearing was held on August 12, 2016. For the reasons that follow, the Court will deny without prejudice Defendants' Motion to Dismiss. The Court will also require Plaintiff to amend his Complaint consistent with this Opinion and Order.

## II.    FACTUAL BACKGROUND

Plaintiff and Defendant Nicholas DelFranco were acquaintances when the events giving rise to this action occurred. Plaintiff became acquainted with the remaining individual Defendants, Tom DelFranco, John Osendorf and Martin Karo, through Nicholas DelFranco.  All of the individual Defendants are principals, owners and/or shareholders of the Defendant Corporations, Organic America, Organic America Supply, Organic America Farms, LLC, Hydroponics House, LLC, Organic America Holdings, LLC, Organic America of Fort Myers, LLC, Homestead Greenhouse Leasing Company, LLC, NDF Enterprises, D&G Green Enterprises, LLC, Mad Hatter Nutrients and Soils, Homestead Hydro, and Organic America Farms of Amherst, LLC.[1]

Plaintiff claims that "[i]n or around July, 2013, by telephone and/or U.S. Postal Service and/or e-mail and/or other electronic communications, some or all of the Individual Defendants contacted [him] in order to solicit Plaintiff to invest in some or all of the Defendant Corporations."  Compl., ¶ 35.  During these communications, some or all of the Defendants represented that he or they owned "legal" marijuana growing warehouses in Michigan, a retail store selling equipment and supplies used in growing crops in Michigan, an organic food retail store in Florida, an organic crop

---

[1]  Plaintiff's Complaint also names John Does 1-10 and ABC Corporations 1-10.

growing facility in Florida, and real property in Massachusetts intended for use as a hydroponic farm growing crops.

Defendant Karo is a licensed attorney who told Plaintiff he would draft a Promissory Note so that Plaintiff could secure a loan from his mother. Based on Karo's assistance with the Promissory Note, Plaintiff believed an attorney-client relationship had been formed.

On August 6, 2013, Nicholas DelFranco, on behalf of Organic America Markets, LLC ("OA"), entered into a written agreement with Plaintiff entitled "Organic America/Emmet Joint Venture Agreement ("JV Agreement")." The JV Agreement states in relevant part that: "The intent is for the parties to ultimately be 50/50 owners of Hydroponics House LLC, d/b/a Organic America of Detroit, which shall be the retail outlet of Organic America in the Detroit area."

In exchange for Plaintiff's payment of $250,000, Plaintiff was to be given 50% ownership interest in Hydroponics House LLC, d/b/a Organic America of Detroit. Once Plaintiff paid $150,000 of the total payment required by the JV Agreement, OA was to begin corporate formation and construction of an herbal remedy dispensary. On August 8, 2013, Plaintiff caused the disbursement of $125,000 to Defendant Greenhouse Leasing Company, LLC via electronic wire transfer.[2] Plaintiff claims that

---

[2] It is not clear why Plaintiff disbursed half of what the JV Agreement required.

the "Individual Defendants and/or Corporate Defendants have failed to engage in the required steps set forth in the JV Agreement[,]" failed to compensate him and rebuffed his repeated requests for an accounting.

On or about August 6, 2013, Plaintiff and Nicholas DelFranco, on behalf of Greenhouse Leasing Company, LLC, entered into a written agreement entitled "Greenhouse Construction and Operation Agreement." The Greenhouse Agreement stated that the parties would be 50/50 owners of an LLC, which shall set up and operate a greenhouse/sheltered growth facility. While Plaintiff alleges that the Greenhouse Agreement required payment from him in exchange for his ownership interest in Greenhouse Leasing Company, LLC, the actual agreement is silent as to the amount of payment required of the Plaintiff.

Plaintiff claims that on or about October 1, 2013, he caused the disbursement of approximately $500,000 via electronic wire transfer to Defendant Greenhouse Leasing Company, LLC. Under the Greenhouse Leasing Agreement, fifty percent of the profits generated by the growth facility were to be paid to Plaintiff. Plaintiff has repeatedly requested stock certificates demonstrating his ownership interest in the company, however none of the Defendants have responded to his requests. Nor has Plaintiff been paid any profits or provided with an accounting of the monies he invested in exchange for his ownership interest.

Plaintiff brought suit on December 23, 2014, in the United States District Court for the District of New Jersey.  Plaintiff brings the following claims against the Defendants: (1) fraud; (2) violation of § 10b of the Securities Exchange Act of 1934; (3) violation of the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. § 1962 ("RICO"); breach of fiduciary duty; (5) violation of N.J.S.A. 14a:12-7; (6) violation of the  uniform fraudulent transfer act; (7) negligent misrepresentation; (8) breach of contract; (9) conversion; (10) unjust enrichment; (11) misappropriation; (12) contract rescission; (13) intentional interference with contractual relationship; (14) intentional interference with prospective economic advantage; and (15) demand for an equitable accounting.

In lieu of resolving the present motion to dismiss, the New Jersey district court granted the Defendants alternative request for transfer of venue.

## III.    LAW & ANALYSIS

### A.    Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows the court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6).  "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon

which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atlantic*, 550 U.S. at 555).

The court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims. To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations and quotations omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

-6-

complaint has alleged–but it has not 'show[n]'– 'that the pleader is entitled to relief.'" *Id*.

### B.   Defendants' Motion to Dismiss

#### 1.   Applicable Law

As an initial matter, the parties dispute the applicable law to apply to this matter.  Plaintiff maintains that New Jersey law applies and Defendants argue that Michigan law should apply under the circumstances.

"[W]hen a case that is in federal court because of diversity jurisdiction is transferred from one forum to another, 'the choice of law is dependent on the nature of the transfer.'" *Newberry v. Silverman*, 789 F.3d 636, 640 (6th Cir. 2015)(quoting *Martin v. Stokes*, 623 F.2d 469, 473 (6th Cir. 1980)).  "If a case is transferred for the convenience of the parties pursuant to 28 U.S.C. § 1404(a), then the state law of the transferor court applies."  *Newberry*, 789 F.3d at 640.  Conversely, "if a case is transferred under 28 U.S.C. § 1406(a) because it was originally filed in the wrong venue, then the state law of the transferee district court applies." *Id.*  The Sixth Circuit has explained that it "has adopted a 'broad construction' of § 1406(a), such that 'the application of § 1404(a) is limited to the transfer of actions commenced in a district court where both personal jurisdiction and venue are proper."  *Id.* at 640 (quoting *Martin*, 623 F.2d at 473-74).

The district court in New Jersey stated it transferred this matter under § 1404(a), however it noted that it most likely "lack[ed] personal jurisdiction over most, if not all, of the Defendants because none of the Defendants are New Jersey citizens, Defendants do not have the requisite minimum contacts with New Jersey, such as conducting business herein, and Defendants have not purposefully availed themselves of the privilege of conducting activities within New Jersey, thus invoking the benefits and protections of its laws." *See* Dkt. No. 2 at 10 (quotation marks and citation omitted).

The New Jersey district court explained that it was "inclined to transfer this case pursuant to § 1404(a) because venue *may* in fact be proper and the Court *may* have personal jurisdiction as to Nicholas [Del Franco] and Karo, making § 1406(a) inapplicable." *Id*. (emphasis supplied). The Court went on to explain that in the event it did not have personal jurisdiction or venue was improper as to Nicholas [Del Franco] and Karo, then it would transfer the matter pursuant to § 1406(a).

Here, although the district court stated the transfer was pursuant to § 1404(a), reliance on § 1404(a) to determine the applicable law would thwart the Sixth Circuit's admonition that "application of § 1404(a) is limited to the transfer of actions where both personal jurisdiction and venue are proper." *Newberry*, 789 F.3d at 641. It is evident that the New Jersey district court lacked personal jurisdiction over all but two

of the Defendants.  It chose not to address whether it had jurisdiction over Karo and

Nicholas DelFranco, as well as whether venue was proper.  However, based on the

venue statute, it appears that venue was most likely improper in New Jersey as well.

It appears that § 1404(a) was not the proper vehicle for transfer of this matter, which

should have been accomplished via § 1406.    Accordingly, Michigan law is the

applicable law.

## 2.    Amendment

The Court will first address Plaintiff's argument that he should be given an

opportunity to amend his Complaint.  Because the Court finds that many of Plaintiff's

claims are deficiently pled, the Court is inclined to permit amendment of the

Complaint.  In opposing Plaintiff's request to amend, Defendants do not assert bad

faith on Plaintiff's part nor do they assert that they will suffer prejudice if Plaintiff is

allowed to amend his Complaint.

Federal Rule of Civil Procedure 15(a) states:

**(a)    Amendments Before Trial**.

(1) *Amending as a Matter of Course*.  A party may amend its pleading once
as a matter of course within:
  (A) 21 days after serving it,
  (B) if the pleading is one to which a responsive pleading is required,
21 days after service of a responsive pleading or 21 days after service of
a motion under Rule 12(b), (e), or (f), whichever is earlier.
  (2) *Other Amendments*.  In all other cases, a party may amend its
pleading only with the opposing party's written consent or the court's

leave.  The court should freely give leave when justice so requires.

Fed. R. Civ. P. 15(a).  Rule 15(a) is intended to "enable a party to assert matters that were overlooked or were unknown at the time the original complaint or answer was interposed."  *Iron Workers Local No. 25 Pension Fund v. Klassic Services, Inc.,* 913 F. Supp. 541, 543 (E.D. Mich. 1996).  Leave to amend should only be denied where "there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility."  *Ziegler v. IBP Hog Mkt., Inc.,* 249 F.3d 509, 519 (6th Cir. 2001).

Here, there is no evidence of bad faith, undue delay or that amendment would be futile.  The Court concludes that justice requires that Plaintiff be given an opportunity to remedy the pleading deficiencies the Court will discuss in turn.

### 3.   Plaintiff's Breach of Contract Claim (Count VIII)

Before delving into a discussion of Plaintiff's deficiently pled claims, the Court notes that Defendants do not seek to dismiss Plaintiff's breach of contract claim. However, Defendants maintain that Plaintiff cannot pursue his breach of contract claim against any party other than Greenhouse Leasing since none of the other Defendants were signatories to the subject Agreements.   However, Defendant Nicholas DelFranco, as principal, owner, manager, and/or shareholder of Organic America and Greenhouse Leasing, signed both Agreements on behalf of the corporations, thus it appears that he can be held liable if it is determined that a breach

-10-

of the agreement occurred. [3]

### 4. Common Law Fraud (Count I), Securities Fraud (Count II), Minority Shareholder Oppression (Count V) and Violation of the Uniform Fraudulent Transfer Act (Count VI)

Defendants complain that all of Plaintiff's claims based in fraud fail to meet the heightened pleading requirements of Rule 9(b). Fed. R. Civ. P. 9(b) ("In alleging fraud[,] a party must state with particularity the circumstances constituting fraud or mistake.") "The purpose of Rule 9(b) is to provide fair notice to the defendant so as to allow him to prepare an informed pleading responsive to the specific allegations of fraud." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir. 1999). Rule 9(b) is intended to "protect a defendant's reputation by precluding unfounded allegations of fraud." *Krieger v. Gast*, No. 4:99-cv-86, 2000 U.S. Dist. LEXIS 3097, * 10 (W.D. Mich. Jan. 21, 2000) (citing *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992)).

In the Sixth Circuit, in order to satisfy Rule 9(b)'s requirements, a plaintiff must "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Coffey v. Foamax L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993).

---

[3] It is unclear if Organic America can be held liable as it appears that Plaintiff brought suit against the wrong entity. The entity that entered into the JV Agreement is Organic America Markets LLC.

A plaintiff must satisfy Rule 9(b)'s particularity requirement as to each element and each defendant. *Krieger*, 2000 U.S. Dist. LEXIS 3097, at *11 (citing *Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co.*, 940 F. Supp. 1101, 1114 (W.D. Mich. 1996).

Of course, Rule 9(b) must be "read in harmony" with Rule 8, which requires only a "short and plain statement of the claim." *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir. 1988). Moreover, Rule 9(b) "may be relaxed where information is only within the opposing party's knowledge." *Id*. at 681.

Here, Plaintiff's allegations fail to meet the particularity requirement of Rule 9(b). His allegations concerning how the Defendants induced Plaintiff to enter into the subject agreements are vague and non-specific. He does not identify who made the statements, their content nor the precise means of communication. Plaintiff fails to articulate the particular fraudulent conduct attributable to each Defendant. Because Plaintiff fails to allege the requisite "time, place, and content of the alleged misrepresentation," he must amend his Complaint so that it complies with Rule 9(b)'s particularity requirement.

Plaintiff's argument that his claims are adequately pled and that he will learn the required specificity through discovery is erroneous. "The Supreme Court's decisions in *Twombly* and *Iqbal* do not permit a plaintiff to proceed past the pleading stage and

take discovery in order to cure a defect in a complaint." *Patterson v. Novartis Pharm. Corp.*, 451 F. App'x 495, 498 (6th Cir. Aug. 23, 2011).  Plaintiff relies on the case of *JAC Holdings Enterprises, Inc. v. Atrium Capital Partners, LLC*, 997 F.Supp.2d 710 (E.D. Mich. 2014), where the court stated:

> Where there has been no discovery in the action, and the alleged fraud occurred over an extended period of time, is within the knowledge and control of the defendants, and consisted of numerous acts, the specificity requirements of Rule 9(b) should be applied less stringently.  It is a principle of basic fairness that a plaintiff should have an opportunity to flesh out her claim through evidence unturned in discovery.  Rule 9(b) does not require omniscience; rather the Rule requires that the circumstances of the fraud be pled with enough specificity to put defendants on notice as to the nature of the claim.

*Id.* at 727 (internal citations and quotations omitted).  However, the allegations in *JAC Holdings*, unlike this matter, were detailed and thorough, thus there was sufficient specificity to put the  defendants on notice as to the nature of the plaintiff's claim.

The *JACs Holding* complaint "span[ned] 115 pages and 436 paragraphs"concerning the defendants purported massive fraud to fabricate sales and conceal losses and liabilities in order to convince the plaintiff to pay significantly more than the defendants' company was actually worth.  *Id.* at 717.  The *JAC Holdings* complaint identified how each defendant participated in the purported conspiracy and "attribute[d] specific false statements to identified individual defendants . . . ."  *Id*. at 720-27.  In concluding that the complaint contained sufficient detail, the court noted

that the plaintiff alleged "specific, affirmative misrepresentations" by presenting a fake budget on a certain date and by representing that the books were accurate and that there were no undisclosed liabilities. *Id*. at 727. The court further found that "[t]he complaint alleges thirteen specific instances where material negative financial information involving millions of dollars in fake earnings, hidden expenses, and unseen liabilities was withheld from the buyers despite their repeated requests for complete and accurate records of JAC's financial condition." *Id*.

Here, Plaintiff's allegations pale in comparison to the details set forth in the *JAC Holdings* case. Plaintiff merely alleges that "[i]n or around July, 2013, by telephone and/or U.S. Postal Service and/or e-mail and/or other electronic communications, some or all of the Individual Defendants contacted [him] in order to solicit Plaintiff to invest in some or all of the Defendant Corporations." Compl., ¶ 35. This does not come close to the detailed allegations set forth in the *JAC Holdings* complaint.

Additionally, Plaintiff's suggestion that internal Defendant complexity precludes him from pleading with particularity is unpersuasive. This is not a situation where fraud took place deep within a corporate organization, rather Plaintiff's claims are based on events in which he was directly involved. The case relied on by Plaintiff, *Whalen v. Stryker Corp.*, 783 F. Supp.2d 977, 982 (E.D. Ky. 2011) is distinguishable from the instant matter. In *Whalen*, the plaintiff alleged that the manufacturer of an

implanted device had misrepresented facts to physicians and hid information from the FDA. *Id.* at 982. The *Whalen* plaintiff was not alleging fraud directed at her but misrepresentations made to other persons whose identities she could not reasonably name with specificity. Here, Plaintiff was privy to the very fraudulent scheme and dealings and should be able to plead with specificity the who, what and when of the purported fraud.

### 5.      RICO claim (Count III)

Defendants argue that Plaintiff's RICO claim is subject to Rule 12(b)(6) dismissal because his claim fails to allege the existence of a RICO enterprise, predicate acts, or a pattern of racketeering activity. The Court agrees with Defendants that Plaintiff has failed to plausibly allege his RICO claim.

To state a RICO claim, Plaintiff must plead the following elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006). An enterprise is a "group of persons associated together for a common purpose of engaging in a course of conduct." *800537 Ontario Inc. v. Auto Enterprises, Inc.*, 113 F. Supp.2d 1116, 1121 (E.D. Mich. 2000). It is "an ongoing structure of persons associated through time, joined in purpose and organized in a manner amenable to hierarchical or consensual decision-making." *Id.* at 1122. A "certain amount of organizational structure" is required so as

to "eliminate[] simple conspiracies from RICO's reach." *Id*. "The hallmark of a RICO enterprise is its ability to exist apart from the pattern of wrongdoing." *Id*. This requirement "avoid[s] the danger of guilt by association that arises because RICO does not require proof of a single agreement as in a conspiracy case . . . ." *Id*. RICO's aim is "criminal enterprises" rather than "individuals who associate for the commission of sporadic crime." *Id*.

Plaintiff fails to plead any type of organizational structure that exists separate and apart from the pattern of wrongdoing. Plaintiff merely alleges that "[t]he Corporate Defendants, and/or the Individual Defendants in their capacity as principal, owner, manager, and/or shareholders of the Corporate Defendants derived income from a pattern of racketeering activity . . . ." Compl., ¶ 108. Plaintiff has pled a conclusory allegation that an enterprise exists, this is not sufficient to withstand Rule 12(b)(6) scrutiny. Moreover, Plaintiff must also allege how each Defendant directly or indirectly conducted the enterprise's affairs. *Reyes v. Ernst & Young*, 507 U.S. 170, 177 (1993). There are no allegations concerning each Defendant's role within the structure such as "operat[ing]" or "manag[ing]" the enterprise. *Id.* at 179.

The Complaint also fails to allege that each Defendant participated in at least two predicate acts. *Kerrigan v. ViSalus, Inc.*, 112 F. Supp.3d 580,605-06 (E.D. Mich. 2015). Plaintiff alleges that: "In or around July 2013, by telephone and/or U.S. Postal

-16-

Service and/or e-mail and/or other electronic communications, some or all of the Individual Defendants contacted Plaintiff to invest in some or all of the Defendant Corporations."  Compl., ¶35.  This is insufficient to allege participation by each Defendant in two predicate acts.

Lastly, Plaintiff fails to allege a pattern of racketeering activity which consists of at least two predicate acts "that are related, and . . . amount to or pose a threat of continued criminal activity."  *H.J. Inc. v. Northwestern Bell Tel. Co..*, 492 U.S. 229, 239 (1989).   The predicate acts may include, inter alia, federal mail fraud under 18 U.S.C. § 1341 or federal wire fraud under 18 U.S.C. § 1343. *See* 18 U.S.C. § 1961(1). The Complaint alleges a single "scheme" against a single victim.  The RICO statute protects against criminal enterprises that engage in racketeering as a "regular way of business" as opposed to isolated instances of criminal "conduct."

In response to Defendants' arguments, Plaintiff simply asserts that he has brought a "'well-pled' Complaint that adequately alleges the required predicate acts, enterprise, and pattern of racketeering."  Resp. at 19.  However, Plaintiff makes this blanket assertion without any further argument nor citation to the Complaint. Moreover, Plaintiff adds details to the factual argument in his brief that are not alleged in the Complaint, as well as attaches an affidavit, as well as a copy of a complaint filed

in the Oakland County Circuit Court which raises similar allegations.[4]   Plaintiff cannot add factual details to his claims via his Response brief to the instant motion.   Plaintiff must amend his Complaint to add specific details of the purported RICO enterprise and its pattern of racketeering activity.

### 6.    Economic Loss Doctrine

Defendants also argue that Plaintiff's fraud based claims, as well as claims of breach of fiduciary duty, negligent misrepresentation and conversion are barred under Michigan's economic loss doctrine.   It is well-settled that a plaintiff may not assert a tort claim against a defendant with whom he had a contractual relationship unless the duty that the defendant allegedly breached is distinct from a duty owed under the contract between the parties.   *See Hart v. Ludwig*, 347 Mich. 559, 565 (1956); *Rinaldo's Construction Corp. v. Michigan Bell Telephone Co.*, 454 Mich. 65, 559 N.W.2d 647, 651 (1997).

As such, because a contract governs the parties relationship, Plaintiff was required to plead "[a] violation of a legal duty separate and distinct from the contractual obligation." *Rinaldo's Const. Corp.*, 454 Mich. at 84.   Here, Plaintiff complains that he did not get the benefit of his bargain when the Defendants failed to

---

[4] This case was removed to federal court in October of 2015 and is before Judge Avern Cohn.  Defendants, represented by the same counsel as in this case, have likewise moved for dismissal of the Complaint.  The hearing on that motion is set for the end of this month.

set up companies or perform under the JV and Greenhouse Agreements. Compl., ¶¶ 66, 67, 83 and 86. As such, it appears that the economic loss doctrine bars Plaintiff's fraud, negligent misrepresentation, breach of fiduciary duty and conversion claims against Defendants Greenhouse Leasing and Nicholas DelFranco. However, because the remaining Defendants are not parties to the subject contracts, it seems that economic loss doctrine would not apply to bar Plaintiff's claims against these Defendants.

### 7.   Intentional Interference with Contractual Relationship and Interference with Prospective Economic Advantage (Counts XII and XIV)

In order to state a claim for intentional interference with contractual relationship, Plaintiff must allege the following elements: (1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy by defendant; (3) an intentional interference by defendant inducing or causing a breach or termination of the relationship or expectancy; and (4) resulting damage to the plaintiff. *Badiee v. Brighton Area Sch.*, 265 Mich. App. 343, 365-66; 695 N.W.2d 521 (2005).

Here, Plaintiff does not set forth the "contracts" which were allegedly interfered with, nor does he identify which Defendants allegedly interfered with the purported contracts or how they interfered with the contracts. Plaintiff has failed to allege a

claim of tortious interference with contract.

Plaintiff has likewise failed to allege a claim for tortious interference with prospective economic advantage or expectancy. Here, the Complaint fails to identify any specific customer, business opportunity or contract that Plaintiff lost or could have gained as a direct result of Defendants alleged activity. The Complaint does not identify which Defendants purportedly breached the subject agreements nor how the breach resulted in the loss of prospective economic advantage.

   8**.**     **Uniform Fraudulent Conveyance Act (Count VI)**

To establish a claim under Michigan's Fraudulent Conveyance Act, Plaintiff must allege four elements: (1) that the defendant is a person under the Act; (2) that it made a conveyance; (3) that it did so with actual intent to hinder, delay, or defraud creditors; and that plaintiffs are creditors under the Act. *Kelley v. Thomas Solvent Co.*, 725 F. Supp. 1446, 1452 (W.D. Mich. 1988).

In the Complaint, Plaintiff alleges that "Defendants, who are directors or officers of Hydroponics House LLC, d/b/a Organic America of Detroit have engaged in fraudulent transfers of assets, profits and capital to some or all of the Corporate Defendants, or other entities still unknown, with the intent to avoid the obligation to be indebted to Plaintiff." Compl., ¶127. Plaintiff further alleges that he is entitled to a 50% ownership interest under the JV Agreement by virtue of his transfer of funds.

-20-

*Id.*, ¶128.   However, sections 4, 5, and 6 of the Act require that as a result of a fraudulent conveyance, a defendant was rendered insolvent, was left with unreasonably small capital or intended to incur debts beyond its ability to pay as they mature. Plaintiff has failed to allege that any of the Defendants were put in any of these financial situations as a result of a purported fraudulent conveyance. Plaintiff also fails to allege a claim under the Fraudulent Conveyance Act.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss [#18] is DENIED WITHOUT PREJUDICE.   Plaintiff shall file an Amended Complaint within fourteen days from the date of this Opinion and Order.   Defendants may file a Motion to Dismiss the Amended Complaint no later than fourteen days from the filing of Plaintiff's Amended Complaint.   Discovery shall be stayed until the Court is satisfied that Plaintiff has stated valid claims entitling him to relief.

SO ORDERED.

Dated: August 18, 2016                    /s/ Gershwin A. Drain_____
                                          GERSHWIN A. DRAIN
                                          UNITED STATES DISTRICT JUDGE


CERTIFICATE OF SERVICE
Copies of this Order were served upon attorneys of
record by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager Generalist